E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JEREMY K. BEECHER (Cal. Bar No. 301272)
ALEXANDER H. TRAN (Cal. Bar No. 338940)
Assistant United States Attorney
General Crimes Section
    1200/1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:    (213) 894-5429/0758
    Facsimile:    (213) 894-0141
    Email:        jeremy.beecher@usdoj.gov
                alexander.tran@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>           v.<br><br>RODOLFO CHAVEZ,<br><br>    Defendant. | Case No. 2:23-CR-141-SPG<br><br>GOVERNMENT'S SENTENCING POSITION<br>FOR DEFENDANT RODOLFO CHAVEZ<br><br>Hearing Date: September 11, 2024<br>Hearing Time: 10:00 a.m.<br>Location:    Courtroom of the<br>               Hon. Sherilyn Peace<br>               Garnett |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Jeremy K. Beecher and Alexander H. Tran, hereby files its sentencing position regarding defendant Rodolfo Chavez.

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit. The

government respectfully reserves the right to file a response to any
of defendant's sentencing positions and to file a supplemental
sentencing position if necessary.

Dated: August 28, 2024              Respectfully submitted,

                                    E. MARTIN ESTRADA
                                    United States Attorney

                                    MACK E. JENKINS
                                    Assistant United States Attorney
                                    Chief, Criminal Division


                                    _____/s/_____
                                    JEREMY K. BEECHER
                                    ALEXANDER H. TRAN
                                    Assistant United States Attorneys

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3   Defendant Rodolfo Chavez launched a violent, random, and
4   unprovoked assault on an elderly mail carrier that put the victim in
5   the intensive care unit.  There is no rhyme or reason for defendant's
6   crime, which has had a permanent, life-altering effect on his victim,
7   a dedicated public servant who will never again be able to work as a
8   United States Postal Service mail carrier, a job that he loved and
9   cherished.

10   On April 24, 2024, defendant pleaded open to the sole count of
11   the indictment, which charges him with assaulting a federal employee
12   causing bodily injury in violation of 18 U.S.C. §§ 111(a)(1), (b).

13   On June 6, 2024, the United States Probation and Pretrial
14   Services Office ("USPPO") filed its Presentence Investigation Report
15   ("PSR"), in which it calculated a total offense level of 25 and
16   determined that defendant falls within Criminal History Category I,
17   resulting in an advisory Guidelines range of 57 to 71 months. (Dkt.
18   37.)

19   The nature and circumstances of defendant's crime are
20   extraordinarily aggravating, and he poses a clear threat to public
21   safety.  Accordingly, the government respectfully recommends that the
22   Court impose a high-end Guidelines sentence of 71 months in custody.

23   ## II.    STATEMENT OF FACTS

24   On the evening of January 20, 2023, victim F.S. was working as a
25   United States Postal Service ("USPS") mail carrier.  Around 6 p.m.,
26   F.S., who was 74 years old at the time, was delivering mail on
27   Marathon Avenue in Silver Lake, Los Angeles.  He was wearing his full
28   uniform and working out of his marked USPS mail delivery vehicle.

(PSR ¶¶ 6-7.)  As F.S. attempted to deliver mail to an apartment building along his route, he encountered defendant, after which F.S.'s life would never be the same.

It is not clear precisely what words were exchanged between defendant and F.S. during that encounter.[1]  What is clear, however, is that their conversation, which appears to have concerned defendant's access to the apartment building, led to defendant's violent and random assault.  F.S. attempted to retreat to his postal truck, and defendant followed him.  (Id. ¶ 7.)  There, in a brutal attack captured on surveillance video, F.S. shoved defendant to the ground and beat him repeatedly:

---

[1] When interviewed by police officers on the scene, F.S. said defendant had tried to follow him through the passcode-controlled front door of the apartment building, at which point he asked defendant whether he lived there and to confirm he knew the passcode. (Exhibit A at 3.)  When interviewed by a postal inspector ten days later, F.S. said defendant had blocked him from entering the apartment building.  (PSR ¶ 71; Exhibit E.)  Any differences between the two accounts are understandable given F.S.'s age and the traumatic event he had just experienced when asked.  In any case, it is undisputed that F.S. did nothing to warrant defendant's violent attack.



(Exhibit B (still except at timestamp 18:06:16); PSR ¶ 7.)   Defendant then retrieved a large yellow foot traffic sign from the walkway of the front walkway:

(Exhibit C (still excerpt at 18:07:07); PSR ¶ 7.)   Defendant then returned to F.S., who remained lying in the street following

3

1    defendant's attack, and proceeded to beat F.S. with the sign he had

2    retrieved from the apartment building's front walkway.

 

(Exhibit B (still excerpts at 18:07:17-21); PSR ¶ 7.)

The violent nature of defendant's attack is echoed in
contemporaneous 911 calls, in which numerous witnesses pleaded with
police to respond and stop defendant's violent assault.  (PSR ¶ 14.)
In one particularly chilling call, the caller reported that F.S. was
"down, []he is not moving," and subsequently, "Oh my God!
[Defendant] came back, he's doing it again!"  (PSR ¶ 14(a).)  In
another 911 call, a witness reported that defendant would kill F.S.
if the attack was not stopped.  (Id. ¶ 14(d).)

Police arrived on scene and found F.S. at the location of the
attack, with his face covered in blood and with obvious lacerations
on his head.  (Exhibit A at 3.)  Paramedics arrived and transported
F.S. to Glendale Memorial Hospital.  F.S. was admitted to the
intensive care unit where he was found to have:  traumatic
subarachnoid hemorrhage within the left frontal parafalcine region
(i.e., bleeding around the brain); distal radius fracture, right
(i.e., wrist facture), with orthopedic follow-up required; two

lacerations on his forehead area, which required stitches; scattered abrasions to the face and scalp; the loss of his right upper central incisor tooth (which is one of the two front teeth); a fracture below the gumline; a moderate hematoma to the left periorbital area (i.e., bruising around left eye); a fractured nose with swelling, with follow-up required for the nasal fracture; moderate left nasal subcutaneous hematoma (i.e., bleeding around nose); and pelvic pain and abrasions and bruising around hip area.  (PSR ¶ 10.)  F.S. was in the intensive care unit for two days.

Medical records show that F.S. was admitted to the intensive care unit with a "high risk of decompensation" and "threat to one or more organ systems."  (PSR ¶ 11.)  The treating provider in the intensive care unit noted a concern about a "high probability of sudden, clinically significant deterioration in the patient's condition," which required "the highest level of my preparedness to intervene urgently."  (PSR ¶ 12.)

At the time defendant attacked him, F.S. was 74 years old and significantly smaller than defendant in height and weight.  (PSR ¶¶ 8, 16.)  On the day of the attack, F.S. had been working for USPS for approximately 30 years.  F.S. had already been eligible to retire with his pension a full decade before the attack.  (Exhibit D.)  He declined to retire, however, and instead preferred continuing to serve the community in a job he loved.  (Id.; PSR ¶ 16.)  In addition to the permanent physical injuries F.S. sustained, however, his persistent anxiety from defendant's attack is so severe that he was forced to retire as a mail carrier.  (PSR ¶ 16.)

**III. GUIDELINES CALCULATION**

USPPO found that defendant's total offense level is 25, based on the following:

| | | |
|---|---|---|
| Base offense level: | 14 | U.S.S.G. § 2A2.2(a) |
| Use of dangerous weapon: | +4 | U.S.S.G. § 2A2.2(b)(2) |
| Permanent/Life Threatening Injury: | +6 | U.S.S.G. § 2A2.2(b)(3)(C) |
| Conviction Under 18 U.S.C. § 111(b): | +2 | U.S.S.G. § 2A2.2(b)(7) |
| Vulnerable Victim: | +2 | U.S.S.G. § 3A1.1(b)(1) |
| Acceptance of Responsibility | -3 | U.S.S.G. §§ 3E1.1(a), (b) |
| Total | 25 | |

(PSR ¶¶ 24-38.)

With an offense level of 25 and a criminal history category of I, the Guideline imprisonment range is 57 to 71 months.

The government agrees with USPPO's calculation of defendant's offense level, Guidelines sentencing range, and criminal history category.

Concurrent with the PSR, USPPO filed its Sentencing Recommendation in which it recommended a three-month downward variance from the low end of the Guidelines range. (Dkt. No. 36.) For the following reasons, the government respectfully disagrees with USPPO's recommended sentence and believes a high-end Guidelines sentence is both warranted and necessary.

**IV.   GOVERNMENT'S SENTENCING POSITION**

**A.   A High-End Term of Imprisonment Is an Appropriate Sentence for Defendant Considering the § 3553(a) Factors**

The Court must impose a sentence that is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).  The Court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  Additionally, the Court should fashion a sentence that reflects the seriousness of the offense, promotes respect for the rule of law, provides just punishment for the offense, affords adequate deterrence to criminal conduct, and protects the public from future crimes of the defendant, among other considerations.  18 U.S.C. § 3553(a)(2).

The government recommends that the defendant be sentenced to a high-end sentence of 71 months' imprisonment; a three-year period of supervised release; and a $100 special assessment.  For the reasons explained herein, this sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

### 1.   Nature and Circumstances of the Offense

The Court must consider the nature, circumstances, and seriousness of the offense.  18 U.S.C. §§ 3553(a)(1), (a)(2)(A).  Defendant's criminal contact is serious and requires an extensive period of incarceration to meet the goals of sentencing.

As noted above, defendant's violent attack on F.S. was severe and unprovoked.  F.S. was indisputably a public servant engaged in his official duties at the time of the attack.  F.S. was also indisputably a vulnerable person in light of his obvious age and

slight frame.  Yet none of that deterred defendant from attacking F.S., not in a split-second burst of anger but in a concerted hail of punches and kicks.  The calculated and deliberate nature of defendant's attack is underscored by the fact that after he concluded his initial beating of F.S., which left F.S. lying in the street, presumably dazed and bloodied, defendant retrieved a large foot traffic sign from the entrance of the apartment building, then returned to the street where F.S. was lying and repeatedly beat F.S. with the sign.  Defendant's attack sent F.S. to the intensive care unit, where he was bleeding from his brain and fighting for his life, and left him with permanent injuries.  (PSR ¶ 29.)

The nature and circumstances of defendant's savage and unprovoked attack on a vulnerable, elderly public servant who was simply trying to deliver mail -- and whose life will never again be the same because of defendant -- is highly aggravating and warrants a high-end Guidelines sentence.

2.  Need for Deterrence and to Protect the Public

A high-end Guidelines sentence of 71 months' imprisonment will also deter similar conduct in the future.  By requiring defendant to serve a significant custodial sentence, the Court will impress upon defendant and others that violently assaulting federal employees, whether they are elderly mail carriers or otherwise, is a very serious crime.  This sentence will also provide defendant significant time to seriously reflect upon his actions and the consequences, and hopefully deter him (and others) from engaging in criminal conduct in the future.

Further, the unprovoked and savage nature of defendant's violent attack on his elderly victim demonstrates that he poses a genuine

threat to public safety.  A high-end Guidelines sentence will protect

the public from a similar incident reoccurring in the near future.

>   3.   Policy Statements and the Need to Avoid Unwarranted
>        Sentencing Disparities

Finally, the Court should sentence defendant in a manner that

avoids unwarranted sentencing disparities among other defendants with

similar records who have been found guilty of similar conduct.  The

best way to ensure consistent sentences for similarly situated

defendants across courtrooms, districts, and the country is to apply

the Sentencing Guidelines uniformly.  United States v. Saeteurn, 504

F.3d 1175, 1181 (9th Cir. 2007).  Here, the government's recommended

sentence is within the Guidelines range calculated by the USPPO.

Accordingly, imposing the government's recommended sentence ensures

that the punishment is consistent with other, similarly situated

defendants.

**B.   Restitution, Fine, and Supervised Release**

The government recommends a three-year period of supervised

release.  Defendant's sudden episode of severe violence in this case,

coupled with his history of arrests for violent conduct and what

appears to be an uneven mental health history, give rise to

significant public safety concerns following his release from

custody.  A three-year period of supervised release will help to

ensure that defendant continues to diligently abide by the law upon

his release from custody, as well as receive structure, monitoring,

and incentives to seek mental health care that will help prevent him

from sliding back into violence or other criminal activity.

9

Based on USPPO's determination that defendant lacks the means to pay a fine (PSR ¶ 103), the government recommends waiving payment of a fine.[2]

The government further recommends that the Court order defendant to pay a $100 mandatory special assessment.

**V.    CONCLUSION**

For the reasons set forth above, the government respectfully requests that defendant be sentenced as follows: (1) a 71-month term of imprisonment; (2) a three-year period of supervised release; and (3) a special assessment of $100.

---

[2] The government is not seeking restitution at this time as it has not been requested by USPS, which has represented to the government through USPIS that it has compensated F.S. for all expenses incurred as a result of defendant's crime.

# EXHIBIT A

**ARREST REPORT**

| BKG. NO. | BOOKING NO. | U.O. | LOC. BKD. | DR. LIC. NO. | STATE | MT | | | UCR CODE CC: 230 |
|---|---|---|---|---|---|---|---|---|---|
| | 6538509 | | 4273 | | CA | Y | | | |

EVID. RPT. ☐  EVID. RPT. ☒

DR 230204840   LA

ARRESTEE'S LAST NAME: **CHAVEZ**  FIRST: **RODOLFO**  MIDDLE:  SUF:

CII A25136433

ADDRESS:  APT. NO.

CITY **LA**  STATE **CA**

MAIN 32282368

SEX **M**  DESCENT **H**  HAIR  EYES  HEIGHT  WEIGHT  BIRTHDATE  AGE

CDC #  PROBATION #

VEHICLE LIC. NO.  STATE **0201**  R.D.  AKA: LAST-FIRST- OR NICKNAME

A.I. CWWS WARR AJIS RLSE PAC AWDI

BIRTHPLACE **LA  CA**  PROB. INV. UNIT **02**  JUV. DETAINED AT  AD. CHG. **N**

**ADMONITION OF RIGHTS** (WHEN APPLICABLE)
THE ADMONITION OF RIGHTS WAS READ VERBATIM PER FORM 15.03.00 BY:  *SEE PAGE # 3*

DIVISION **4202**  DETAIL ARRESTING **A**  DATE ARRESTED **012023**  TIME ARR. **1815**  TIME BKD. **2137**

LOCATION OF ARREST **VERMONT AV MARATHON ST**

BAIL **50000**  TOTAL BAIL **50000**

*YADON*  44984
NAME  SERIAL NO.

TYP. **F**  CHARGE & CODE **243(D)PC**  DEFINITION **BATTERY/GBI**  WARRANT NO. ☆

ADDITIONAL CHARGES (ON ADDL. WARRS. LIST NO., COURT, AND BAIL, INCL. P.A.)

SOCIAL SECURITY NO.

ARRAIGN. DATE  TIME  COURT  LOCATION CRIME COMMITTED **SAA**  R.D.  RESIDENCE PHONE NO. **SAME**

EMPLOYER / SCHOOL

OCCUPATION / GRADE **UNEMPLOYED**  PHY. ODD.

CLOTHING WORN **BLK SHT, BLK JNS, NO SHOES**

EXACT LOCATION / DISPOSITION ARRESTEE'S VEHICLE **PED**  HOLD FOR:

LIST CONNECTING RPTS. BY TYPE & IDENTIFYING NOS. *AFDR 32909891*

VEHICLE USED (YEAR, MAKE, MODEL, TYPE, COLORS, LIC. NO., ID MARKS)

PASSENGERS M F

COMPLAINTS / EVID. OF ILLNESS / INJ.-BY WHOM TREATED *PRE-EXISTING INJ.; HPD JAIL DISP. TO.*  Hitchcock

DRIVING VEH. (DIRECTIONS & NAME OF STREET) AT OR BETWEEN STREETS  RETAINED  CASH  DEPOSITED

**INVOLVED PERSONS**  Code: V: VICTIM  W: WITNESS  P/A: ARRESTING PRIVATE PERS.  TO: TRUE OWNER  R: PERSON RPTG.  459: S-PERSON SECURING  D-PERSON DISCOVERING  JUV: P-BOTH PARENTS  G-GUARDIAN

| | NAME | V & WS | SEX | DESC. | D.O.B. | ADDRESS | CITY | ZIP | PHONE | DAY | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| V | | | M | A | 5/11/48 | R | | | (323) | | X |
| | S | F | | | | B | | | | | |
| | | | | | | E-MAIL | | | CELL | | |
| | | | M | H | 5/11/61 | R | | | (323) | | X |
| W | | | | | | B | | | | | |
| | F | D | | | | E-MAIL | | | CELL | | |
| | | | | | | R | | | | | |
| | | | | | | B | | | | | |
| | | | | | | E-MAIL | | | CELL | | |

FILE COPY

**COMBINED CRIME REPORT**  IF MULTI. ARRESTEES THIS SECTION & ABOVE CRIME RPT. CHECK BOX IS COMPLETED ON ONLY ONE FACE SHEET.

TYPE OF OFFENSE **BATTERY W/ SERIOUS BODILY INJURY**  VICT'S OCCUPATION **MAILMAN USPS**

DATE AND TIME CRIME OCCURRED **1/20/23  1740**  TYPE PROPERTY  TOTAL $  EST. DAMAGE $  TYPE PREMISES **STREET**

459/ BFD ONLY-POINT AND METHOD OF ENTRY  WEAPON / FORCE / INSTRUMENT USED **BODILY FORCE**  TFV / BFV ONLY - VICT'S VEH. (YR., MAKE, TYPE, LIC.)

MO (UNIQUE ACTIONS) *SUSP APPROACHED VICT AND BEGAN USING CLOSED FIST TO STRIKE VICT. VICT FELL TO GRAND AS SUSP CONT STRIKING VICT IN THE FACE AREA*  VICT SUCT. (ACERATION, 1PCE OF TOOTH)

GANG RELATED ☐  MOTIVATED BY HATRED / PREJUDICE ☐  DOMESTIC VIOLENCE ☐  MANDATORY MARSY'S RIGHTS CARD PROVIDED TO THE VICTIM ☒

**COMBINED EVID. RPT.**  USE THIS SECTION IN LIEU OF PROPERTY REPORT IF ONLY ONE ITEM OF PROPERTY AND NO GUN, AND NO MORE THAN 2 ITEMS OF EVID.

LOC. EVID. BKD.  16.10.00 GIVEN? Y (N)  Preliminary Drug Test  Y (N)  SUPV. / INV. OFCR. TESTING  SERIAL NO.  WITNESS OFCR.  SERIAL NO.

ITEM  QUAN.  ARTICLE  SERIAL NO. / TYPE TEST OF DRUG  BRAND / DRUG WEIGHT UNITS  MODEL NO. / DRUG TEST RESULTS  MISC.

**APPROVAL / REPORTING OFFICERS**  SUPERVISOR APPROVING REPORT  SERIAL NO. 51920  RAP SHEET ATTACHED ☐ YES ☒ NO

REPORTING OFFICER(S) **YADON**  SERIAL NO. **44984**  DIV. & DETAIL **RAMP**  VACATION

DATE & TIME REPRODUCED **1-/21-2023 0022 02**  DIV. **EW**  CLERK ☒ YES ☐ NO

(P.P. ARREST OFCR. BKG. EVID. IF LISTED ON THIS PAGE) **KIM**  43892  2A46  Passed

INVEST. OFCR.  SERIAL NO.  DIV.

**JUVENILE DISPO.**  Petition Request:  ☐ DETAINED  ☐ RELEASED  ☐ NON-BOOK  ☐ NON-BOOK WARR.

FINAL CHARGE (IF DIFFERENT THAN ORIGINAL) (SECTION, CODE & DEFINITION)  IF REFERRED, AGENCY & PERSON ACCEPTING REFERRAL  PROPERTY BOOKED? Y N  IF YES, 10.08.00 COMPLETED? Y N  SUPERVISOR APPROVING  SERIAL NO.

JUV. COORD. REVIEWING  SERIAL NO.

| 11 ☐ C & R | 13 ☐ EXON-INNOCENT | 04 ☐ CYA | 18 ☐ JUV. TRAF. MISD. | 16 ☐ DCFS |
|---|---|---|---|---|
| 11 ☐ ACTION SUSP. | 12 ☐ REL-INSUF. EVID. | 03 ☐ PROBATION | 17 ☐ FIRE DEPT. | ☐ OTHER |
| 14 ☐ PROVED ADULT | 03 ☐ COMMUNITY SERVICE | 05 ☐ OTH. LAW ENF. AGENCY | 10 ☐ DEPT. MENTAL HEALTH | |

DATE / TIME DISPO. REPROD.  DIV. / CLERK

05.02.00 (01/15)  *INC 23012000003471*  **ARREST REPORT**  USAO_000042

**CONTINUATION SHEET**

Los Angeles Police Department

| PAGE NO. | TYPE OF REPORT | | | | BOOKING NO. | DR NO. |
|---|---|---|---|---|---|---|
| 2 | Crime / Arrest | | | | 6538509 | 230204840 |

| ITEM NO. | QU AN | ARTICLE | SERIAL NO | BRAND | MODEL NO. | MISC DESCRIPTION (EG. COLOR, SIZE, INSCRIPTIONS, CALIBER, REVOLVER, ETC) | DOLLAR VALUE |
|---|---|---|---|---|---|---|---|

**Suspect:** Chavez, Rodolfo
**D.O.B:** 10/04/1989
**Charge:** 243(D) PC- Battery with S.B.I

**Source of Activity:**
On 01/20/2022, my partner, Officer Yadon #44984, and I, Officer Kim #43892,
were working Rampart Division Patrol Unit 2A46-W5. We were in full police uniform driving a marked black and white police vehicle. We responded to radio call of battery in progress at Marathon St and Vermont Ave. The comments of the call stated, "SUSP M/H ASSAULTING M/A, POSTAL WORKER, VICT ON GROUND. SUSP M/H, 20-30 YRS, SHORT BLK HAIR, DARK SHIRT, POSS WEARING JEANS, SUSP WAS KICKING VICT IN HEAD, NO WPNS SEEN."

Incident: 230120003471
RD:0201

**Investigation:**
Upon arrival, Officers were directed by nearby citizens of the possible Suspect's location, in front of 4150 Marathon St. Officers observed the possible Suspect (later identified as Chavez, Rodolfo)- standing in front of the driveway of the apartment complex with dried blood from his fist Officers immediately attempted to detain the Suspect for a battery investigation.

**Use of Force:**
While attempting to detain the Suspect, Officers gave numerous commands for the Suspect to turn around and place his hands behind his back, however the Suspect refused and took a fighting stance (hands clenched into a fist by his side) towards the Officers. As Officers continued to give verbal commands, the Suspect refused to listen to Officers command and attempted to walk past between the Officers and flee the location. To prevent escape, I, Officer Kim, immediately applied firm grip and used physical force to the Suspect's left wrist and left shoulder area. Simultaneously, Officer Yadon, applied firm grip and used physical force on the Suspect's right forearm area. Officers attempted to control the Suspect's hands by placing them behind his back; however, the Suspect physically resisted by stiffening his body and attempting to break free from Officers' firm grips. Officers walked the Suspect toward a nearby wall and used it as a controlling agent. However, the Suspect continued to resist and attempted to turn towards Officer Yadon. The Suspect continued to resist Officer's detention, I requested a backup, airship, and supervisor. Officer Yadon conducted a leg sweep on both the Suspect's legs and we both utilized a team take down to take the Suspect down to the ground. While the officers were guiding the Suspect to the ground, we maintained our firm grips. Using the ground as a controlling agent, I, Officer Kim, applied body weight on the Suspect's left lower back area to gain control of the Suspect. I transitioned my firm grip from the Suspect's left forearm area to his left wrist and used a twist lock on his left hand. At the same time, Officer Yadon applied his body weight on the Suspect's right lower back area. Officer Yadon maintained his firm grip on the suspects right wrist area and was able to successfully handcuff the Suspect's right wrist. While I was maintaining the twist lock on the Suspect's left hand, Officer Yadon was able to successfully handcuff the Suspect's left wrist.

## CONTINUATION SHEET

Los Angeles Police Department

| PAGE NO. 3 | TYPE OF REPORT | Crime / Arrest | | | | BOOKING NO. 6538509 | DR NO. 230204840 |
|---|---|---|---|---|---|---|---|

| ITEM NO. | QU AN | ARTICLE | SERIAL NO | BRAND | MODEL NO. | MISC DESCRIPTION (EG. COLOR, SIZE, INSCRIPTIONS, CALIBER, REVOLVER, ETC) | DOLLAR VALUE |
|---|---|---|---|---|---|---|---|

Officers ordered the Suspect to standup, however, the Suspect refused. 2A56-W4 (Officer Martinez #43422 and Officer Bello #44959) arrived at scene.

At this time the Suspect stopped resisting and made his body limp. My partner and I lifted the Suspect up to his feet-with the assistance of Officer Bello. When we lifted the Suspect onto his feet he was no longer resisting, and this was not part of the use of force. 2A56-W4 stood by with the Suspect as we continued our investigation.

**Investigation Continued:**
After the use of force, Officers located the Victim/ USPS employee (later identified as S█████ F█████) across the street from the location. Officers observed the Victim's face covered in blood and lacerations to his forehead area. I, Officer Kim, spoke with the Victim who stated on 01/20/2023 at approximately 1745 hours, he was entering the apartment complex-4150 Marathon St.- to deliver mail. As he was entering the apartment complex, the Suspect followed behind him as the doors were closing. The Victim asked the Suspect if he lived at the location and to enter the keycode to confirm he had lived there. The Suspect became agitated and punched the Victim on his face- causing the Victim to fall to the ground. As the Victim was on the ground, the Suspect mounted onto the Victim and continued to punch the Victim's face numerous times.

Officer Yadon spoke with a Witness (later identified as F███ I█████) who stated on 01/20/2023 he was driving on Marathon St and Vermont Ave., he observed the Suspect punching the Victim-causing the Victim to fall to the ground. While the Victim was still on the ground, the Suspect continued to punch the Victim numerous times.

**Arrest:**
Chavez was placed under arrest by my partner, Officer Yadon and I, Officer Kim, for 243(d) PC- Battery with S.B.I.
Officer Yadon mirandized the Suspect in which he stated, "Yes", "Yes", "Yes", "Yes"

**BOOKING:**
Chavez was booked for 243(D) PC- Battery with S.B.I, with the approval of Rampart Division Watch Commander, Sgt. Williams #25684, and was transported to MDC jail without further incident.

**INJURIES/ MEDICAL TREATMENT:**
RA 6 (Pineda #385114 and Craig #376281) arrived at scene and transported the Victim to Glendale Memorial Hospital.
The Victim sustained two laceration to his forehead area- where stitches are need, loss of a tooth, complaint of pain to his left shoulder area and left wrist area.
The Suspect had pre-existing injuries- abrasion on his left elbow area, red scratch on his left neck area.
The Suspect refused RA 6's medical treatment and had no complaint of pain.
The Suspect was medically treated cleared by MDC jail dispensary Dr. Hitchcock.

**CONTINUATION SHEET**

Los Angeles Police Department

| PAGE NO. | TYPE OF REPORT | | | | BOOKING NO. | DR NO. |
|---|---|---|---|---|---|---|
| 4 | Crime / Arrest | | | | 6538509 | 230204840 |

| ITEM NO. | QU AN | ARTICLE | SERIAL NO | BRAND | MODEL NO. | MISC DESCRIPTION (EG. COLOR, SIZE, INSCRIPTIONS, CALIBER, REVOLVER, ETC) | DOLLAR VALUE |
|---|---|---|---|---|---|---|---|

## PHOTOS-RECORDINGS-VIDEOS-DICV-BWV-DIGITAL IMAGING

Officers BWV were activated during this incident and stored under the incident number.

This investigation was captured on BWV. All statements in the investigation are paraphrased by investigating Officers. Paraphrased statements do not contain the entire statements and are the Officer's interpretation of the statements

Officer Kim took four photographs of the Victim's injuries and was uploaded to Axon Captures

## EVIDENCE:

None.

## CANVASSING:

Officers canvassed the area for possible additional witnesses with negative results.

## ADDITIONAL:

Officer spoke with nearby citizen (later identified as V███████, A██ - Cellphone #562-█████████ who stated she observed the Suspect possibly choking another victim at the laundromat located at S/E/C of Vermont Ave and Marathon St.

I, Officer Kim, asked the patrons of the laundromat if they had observed any physical altercations- and was met with negative results.

I spoke with the employee of the laundromat who stated only the manager (R████, E████████ #323-█████████) had access to the video footage.

Sergeant Chavez #27110 working 2L120 Watch 5 responded to our supervisor request. He handled the UOF investigation. He canvassed the area for witnesses and video cameras. There was a video camera at 4150 Marathon Street where the UOF occurred. Sergeant Chavez was able to get the video clip of the UOF from the building manager and uploaded the video onto his UOF investigation. Sergeant Chavez took 4 photos of the suspect and the UOF location. The photos were assigned D # 0821830 and booked at TID Photos at a later date. Sgt Chavez reviewed the Officers' BWV and revealed the Officers' BWV is consistent with the Use of Force.

## COURT INFORMATION:

My partner and I can testify to the contents of this report. All the Officers mentioned in the report can testify to their respective roles.

USAO_000045

# Exhibit B
# Surveillance Video
# (Filed manually)

# Exhibit C
# Surveillance Video
# (Filed manually)

# EXHIBIT D



# UNITED STATES POSTAL INSPECTION SERVICE
## IS FORM 75 - REPORT OF ACTIVITY

| CASE NUMBER \| PROGRAM | DIVISION | DOMICILE | ACTIVITY DATE | START TIME: | END TIME: |
|---|---|---|---|---|---|
| ▮▮▮▮▮▮▮ | LOS ANGELES | LOS ANGELES DHQ | 05/21/2024 | | |
| SUBMITTING EMPLOYEE \| WRN | ACTIVITY TYPE | | | | |
| TTYu-6613 | Misc-Other | | | | |
| REPORT TITLE<br>Victim impact statement | | | | | |

<u>**DETAILS**</u>

Mr. S▮▮▮ did not want to provide a victim impact statement. I prepared the following information in lieu from the investigation and conversations with Mr. S▮▮▮.

Mr. S▮▮▮ is 76 years old and has been working for USPS as a mail carrier for over 30 years. Mr. S▮▮▮ has been eligible for a pensioned retirement from USPS more than a decade ago and instead chose to serve the community in Los Angeles in a job he loves. Following the unprovoked physical assault Mr. S▮▮▮ suffered from hemorrhaging of the brain and fought for his life in the hospital ICU unit for two days. As a result of this incident Mr. S▮▮▮ suffers frequent bouts of anxiety attack and was forced to retire from USPS.

END OF REPORT

**IS Form 75**
**Report of Activity**
**Updated 06.02.2023**
**All previous versions of this form are obsolete**

**Law Enforcement Sensitive**

*This report is the property of the U.S. Postal Inspection Service. Possession, dissemination, distribution, or copying of this report or its contents is prohibited without express permission of the U.S. Postal Inspection Service.*



# EXHIBIT E

# UNITED STATES POSTAL INSPECTION SERVICE
## IS FORM 75 – REPORT OF ACTIVITY

Page | 1

| CASE NUMBER | PROGRAM | DIVISION | DOMICILE | ACTIVITY DATE | START TIME: | END TIME: |
|---|---|---|---|---|---|
| ███████████ | Los Angeles | Santa Ana | 1/20/2023 | | |

| SUBMITTING EMPLOYEE | WRN | ACTIVITY TYPE |
|---|---|
| Tony Yu 6613 | Interview |

| REPORT TITLE |
|---|
| Interview of USPS Letter Carrier F████ S███ |

## DETAILS

On January 20, 2023, PI Yu interviewed United States Postal Service (USPS) Letter Carrier F████ S████ (S███) at Glendale Memorial Hospital regarding the assault. After PI Yu identified himself and the purpose of the interview, S███ voluntarily provided the following information in essence:

On January 20, 2023, at approximately 6:00 p.m. S███ was delivering mail to 4150 Marathon St. in Los Angeles. A Hispanic male in his 30's, later identified as Rodolfo Chavez, was blocking the entrance to the building and wouldn't allow S███ to enter. Chavez stated something to the effect that his brother lives in the building and S███ is not allowed to enter. S███ turned around to leave and was attacked from behind by Chavez. S███ stated he cannot recall the details of the attack because it happened so fast, and everything was a blur. S███ remembers when the attack stopped, he got up to pick up the mail and moved to the side of the street. Chavez stood across the street and did not leave the area. Officers from the Los Angeles Police Department arrived on scene and Chavez was yelling at them. Chavez got into a scuffle with the Officers and was arrested. Paramedics later arrived and transported S███ to the hospital.

## REFERENCE

- F████ S████ – DOB ████/1948, Cell Phone 323-██████


END OF REPORT

| SUBMITTING EMPLOYEE | WRN | SIGNATURE | DATE SUBMITTED |
|---|---|---|
| Tony Yu 6613 | *Tony Yu* | 1/26/2023 |
| REVIEWING EMPLOYEE | WRN | SIGNATURE | DATE REVIEWED |
| Raul Pina 5057 | *Raul A. Pina* | 1/30/2023 |

IS Form 75
Report of Activity
Updated October 1, 2022
All previous versions of this form are obsolete

**Law Enforcement Sensitive**
*This report is the property of the U.S. Postal Inspection Service. Possession, dissemination, distribution, or copying of this report or its contents is prohibited without express permission of the U.S. Postal Inspection Service.*

USAO_000124