CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JELANI J. LINDSEY (Bar No. 280092)
(E-Mail: Jelani_Lindsey@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
RODOLFO CHAVEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RODOLFO CHAVEZ,<br><br>　　　　　Defendant. | Case No. 2:23-cr-00141-SPG<br><br>**DEFENDANT'S SENTENCING MEMORANDUM; EXHIBITS**<br><br>**Hearing Date:** September 11, 2024<br>**Hearing Time:** 10:00 a.m. |

# I. INTRODUCTION

Mr. Chavez has lived a difficult life that has been marred by mistreatment, molestation, and mental illness. His struggles with mental illness is the driving force behind his conduct, which has him awaiting sentencing before this Court. However, that conduct does not define who Mr. Chavez is as a person, nor his prospects for the future. Mr. Chavez is a loving son, brother, and uncle to his family. With a release plan that connects him to the appropriate mental health treatment and other social services, he can become a functioning and productive member of our society.

18 U.S.C. § 3553(a) requires that the Court impose a sentence "no greater than necessary" to comply with the purposes of sentencing. *Id*. Based on the 18 U.S.C. § 3553(a) factors, Mr. Chavez respectfully requests that the Court impose a sentence of 30 months in custody, followed by a three-year term of supervised release.

# II. ARGUMENT

## A. Mr. Chavez Objects to the United States Probation Office's Presentence Investigation Report

On April 24, 2024, Mr. Chavez pled guilty to one count of assault on a federal employee in violation of 18 U.S.C. § 111. Dkt. 34. The United States Probation Office ("the probation office") filed a Recommendation Letter (Rec. Ltr.) and a Presentence Investigation Report ("PSR" or "presentence report"), on June 6, 2024. Dkts. 36 & 37. The probation office determined Mr. Chavez's total offense level to be 28, and his criminal history category to be I. *Id*. at 3. While he agrees with the probation office's conclusion that a sentencing variance is warranted, he disagrees with its determination that a departure is not warranted under U.S.S.G. § 5H1.3. Dkt. 36 at 6.

Mr. Chavez objects to the probation office's determination that a mental health departure pursuant to U.S.S.G. § 5H1.3 is not warranted. Mr. Chavez's mental health conditions were the driving force behind his conduct in the offense. In the early morning hours of January 20, 2023, the date of the offense, Mr. Chavez was found naked sitting on a beach boardwalk in Santa Monica, California near a private

residence. *See* Exs. B & B-1, Santa Monica Police Department Body Camera Footage and Body Camera Footage Transcript. He was under the delusion that he lived at the residence and that his wife would not let him into the residence. Ex. B. He was taken into police custody and, at some point, released. This was the beginning of Mr. Chavez's mental health episode on the day of the offense. Mr. Chavez was in throws of a mental health episode in the immediate aftermath of his commission of the offense. *See* Exs. C & C-1, Los Angeles Police Department Body Camera Footage and Body Camera Footage Transcript. He was speaking incoherently and experiencing extreme delusions when he was confronted by Los Angeles Police Department officers. Ex. C. His mental health episode was so severe that he had to be hospitalized after the incident. Ex. D, Excerpts of Mr. Chavez's Mental Health and Medical Records, filed separately *under seal*, at 4 and PSR ¶ 74.  Because Mr. Chavez was experiencing a mental health episode before, during, and after the offense conduct, a departure pursuant to U.S.S.G. § 5H1.3 is warranted here. Mr. Chavez respectfully requests that the Court apply a four-level departure to his sentencing guidelines.

**B.    Applicable Law**

In *Booker*, the Supreme Court made clear that the Sentencing Reform Act of 1984, rather than the Sentencing Guidelines, governs sentencing decisions. *United States v. Booker*, 543 U.S. 220, 260-61 (2005); 18 U.S.C. §3553(a). After *Booker*, the guidelines are no longer the sole consideration of the Court in determining a sentence in a particular case; rather, the guidelines are now purely advisory. *Id*. Today, the "overarching statutory charge" mandates the district court to "impose a sentence sufficient, but not greater than necessary" to reflect "the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or correctional treatment." *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citing 18 U.S.C. § 3553(a) and (a)(2)).

The paradigmatic shift that *Booker* created expanded the choices that a judge has in sentencing a particular defendant. *See Cunningham v. California*, 549 U.S. 270, 287 (2007) (explaining that "judges would no longer be tied to the sentencing range indicated in the Guidelines."). Although judges are mandated "to take account of the Guidelines together with other sentencing goals," they "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007). Additionally, in a particular case, a judge has the autonomy to decide that "the Guidelines sentence itself fails to properly reflect § 3553(a) considerations," that "the case falls outside the 'heartland' to which the Commission intends individual Guidelines to apply," or simply that "the case warrants a different sentence regardless." *United States v. Rita*, 551 U.S. 338, 351(2007). In instances where the sentencing court determines the defendant should be sentenced outside the guidelines range, the court need not justify the variance based upon "'extraordinary' circumstances." *Gall*, 552 U.S. at 47. Likewise, the sentencing court need not apply "a rigid mathematical formula that uses a percentage of a departure as the standard for determining the strength of the justification required for a specific sentence." *Id*. Rather, the sentencing court need only "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id*. at 50.

C.   Examination of the Relevant 18 U.S.C. § 3553(a) Factors

   1.   Mr. Chavez's History and Characteristics

      a.   Early Childhood and Adolescence

Mr. Chavez was born in 1989, in Los Angeles, California, to Rodolfo Vela and Emma Chavez. PSR ¶ 56. Mr. Chavez's biological father abandoned his mother before he was born. Ex. A, Release Plan by Agustina Sepulveda, MSW (ASW96411), filed separately *under seal*. Mr. Chavez's mother immigrated from Mexico to the United States when she was pregnant with Mr. Chavez. PSR ¶ 56. He primarily grew up in the East Hollywood section of Los Angeles.

When Mr. Chavez was a toddler, his mother married his stepfather, Francisco Vela. *Id*. ¶ 57. Though Mr. Chavez's biological father and stepfather share the same surname, they are not related. *Id*. Mr. Chavez's mother and stepfather went on to have five other children. *Id*. ¶ 60.

Growing up as young child, Mr. Chavez's stepfather subjected him to mistreatment. His stepfather treated him differently than he treated his biological children. His stepfather would kick and slap him on almost a daily basis. Ex. A at 3. Mr. Chavez did not learn that his stepfather was not in fact his biological father until he was sent to live with his paternal grandmother in Mexico at the age of five years old.

Additionally, Mr. Chavez was subject to bullying at school. Ex. A at 3-4. Due to his then-small stature, his schoolmates would call him names, make fun of his height, physically shake him, and push him into walls. *Id*.

Compounding the physical abuse that Mr. Chavez was subjected to inside and outside of his home, Mr. Chavez was also subjected to sexual abuse. PSR ¶ 56; Exhibit A. When he was 10 years old, one of his stepfather's cousins sexually assaulted him. Ex. A at 4. He was too afraid to tell his parents and kept it to himself for years. *Id*. Approximately a year ago, he told his mother what happened for the first time after he kept experiencing intrusive thoughts related to the sexual assault. *Id*.

Mr. Chavez struggled with depression and suicidal ideation throughout most of his childhood and adolescent years. Ex. A at 2. He struggled academically in school, and he dropped out of Hollywood High School in the 11th grade. PSR ¶ 84.

    **b. Young Adulthood, Struggles with Mental Health Issues, Education Background, and Employment**

Although Mr. Chavez dropped out of high school, he did go on to obtain his GED. PSR ¶ 84. At approximately the age of 18, he started working at Target and then at an auto body shop. He completed a nine-month program at ICDC College for Homeland Security, after which he worked as a security guard at the CBS studios for approximately three years.

5

Mr. Chavez tried to join the Army but was told he would have to obtain college credits to do so, leading him to attend a community college. He received two associate degrees from Los Angeles City College. PSR ¶ 85. Despite earning two associates degree, he was rejected again from the Army without being provided an explanation. This was followed by other employment as a security guard until the age of 25 when he started working in property management. *See* ¶¶ 86-93.

Beginning in 2015, Mr. Chavez was subjected to periods of hospitalizations for manic psychotic episodes. PSR ¶ 76. He has been placed on an involuntary mental health holds pursuant to Section 5150 of the California Welfare and Institutions Code on multiple occasions. Exhibit A at 3. His episodes are characterized by an inability to sleep, hallucinations, delusions, and odd behaviors. Exhibit D at 4. He has been diagnosed with schizophrenia, bipolar disorder, PTSD, anxiety, and depression. *See* e.g., PSR ¶¶ 71-72. He has been prescribed psychiatric medication such as Ability and Zyprexa to treat his mental health conditions. *Id*. ¶ 71.

### c.  Plans for the Future and Needs for Vocational/Educational Training

Mr. Chavez needs treatment for his chronic, severe mental health conditions. He also needs other complimentary social services to ease his transition back into society following his incarceration. Additionally, he needs educational and vocational training in order assist him in accomplishing his future career goals of becoming an entrepreneur and opening his own restaurant. *Id*. ¶ 95.

### 2.  Just Punishment and Deterrence

A sentence of 30 months in custody followed by a three-year period of supervised release, is a severe sanction that constitutes just punishment for the offense. The sentence considers Mr. Chavez's unique history and characteristics. With respect to deterrence, Mr. Chavez's mental health issues are the primary reason why he finds himself awaiting sentencing before the Court. Provided that Mr. Chavez receives the proper treatment for his mental health conditions, Mr. Chavez's risk of recidivism will

be low. *See* Marc Mauer, *Longer-Term Sentences: Time to Reconsider The Scale of Punishment*, 87 UMKC L. Rev. 113, 123 (2018) (debunking the myth that lengthy prison sentences serve a substantial deterrent effect). Additionally, because Mr. Chavez needs extensive mental health treatment, rehabilitation is better for him than incarceration because it is unlikely that he will receive adequate treatment while he is incarcerated. *See* Doris J. James & Lauren E. Glaze, *Mental Health Problems of Prison and Jail Inmates*, NCJ 213600, at 9 (2006) https://www.bjs.gov/content/pub/pdf/mhppji.pdf.

### III. CONCLUSION

Given his unique history and characteristics, Mr. Chavez respectfully requests that the Court sentence him to 30 months in custody followed by a three-year term of supervised release.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: August 28, 2024          By  /s/ Jelani J. Lindsey
                                JELANI J. LINDSEY
                                Deputy Federal Public Defender
                                Attorney for RODOLFO CHAVEZ